

STATE OF NORTH CAROLINA FILED IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

FORSYTH COUNTY 18 CVS 4829

2018 OCT -8 P 4: 17

FORSYTH CO., C.S.C.

BY SA

ALYSON SHOAF,

    Plaintiff, )

             )

  v. )     **COMPLAINT**

             )

THOMASVILLE CITY SCHOOLS BOARD )

OF EDUCATION; PATRICE FAISON; )

BARBARA ARMSTRONG, )

             )

    Defendants. )

---

The plaintiff, complaining of defendants, alleges the following:

## NATURE OF ACTION

1. Plaintiff has instituted this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the public policy of North Carolina, and the common law of North Carolina to recover damages for the violation of her civil rights.

## PARTIES

2. The plaintiff, Alyson Shoaf ("Shoaf"), is a resident of Davidson County, North Carolina. At all times pertinent to this action, plaintiff was an "employee" of defendant Thomasville City Schools Board of Education within the meaning and definition of Title VII, 42 U.S.C. § 2000e(f), 42 U.S.C. § 1981, *et seq.,* and the common law of North Carolina.

3. Thomasville City Schools ("TCS") is a school district established pursuant to the laws of the State of North Carolina, and defendant Thomasville City Schools Board of Education ("TCS Board") is a body corporate established pursuant to N.C. Gen. Stat. § 115C-40 and is the proper party for prosecuting and defending suits against Thomasville City Schools. At all times pertinent to this action, defendant employed over 500 employees, and was the "employer" of plaintiff within the meaning and definitions under Title VII, 42 U.S.C. § 2000e(b), 42 U.S.C. § 1981, *et seq.,* and pursuant to North Carolina law.

4. The defendant, Patrice Faison is, upon information and belief, a resident of Davidson County, North Carolina. At times relevant to this action, Faison was superintendent of TCS, and was plaintiff's supervisor.

5. The defendant, Barbara Armstrong is, upon information and belief, a resident of Davidson County, North Carolina. At times relevant to this action, Armstrong was director of human resources of TCS.

6. At all times relevant to this action, TCS Board had the power to direct, control, and supervise Faison and Armstrong. TCS Board had the power to hire or fire Faison and Armstrong or modify the terms of employment. For all times relevant to this action, Faison and Armstrong were employees and agents of TCS Board.

## FACTS

7. Plaintiff is a Caucasian woman.

8. Plaintiff was employed by TCS from October, 2014 until July 17, 2017, as Healthy Eating Active Living (HEAL) coordinator.

9. As alleged above, TCS is a school district encompassing numerous schools in the Thomasville, North Carolina area. Plaintiff, as HEAL coordinator, was tasked with increasing physical activity and nutrition among students across the entire district.

10. At all times during plaintiff's employment, and by all objective measures, plaintiff met or exceeded any reasonable expectations of her employer in the performance of her duties.

11. During her time working for defendants, plaintiff consistently met goals, diligently performed all of her job responsibilities, and her efforts were acknowledged numerous times. Specifically, her work as HEAL coordinator was recognized in several media outlets, and she was asked to present at conferences across the country.

12. In or about April, 2017, plaintiff began reporting to a new superintendent, defendant Faison. Prior to Faison's hire, plaintiff's employment record was unblemished, and her excellent performance was never questioned.

13. Faison immediately and transparently displayed disdain for plaintiff from the first time the two met. In fact, during their introductory meeting, Faison, who is African-American, made a mocking and demeaning comment towards plaintiff about the fact that plaintiff is Caucasian.

14. During the entire time plaintiff and Faison worked together, Faison was invariably dismissive, disrespectful, and hostile towards plaintiff. Over the several months they worked together, plaintiff came to realize she was being treated differently than her African-American counterparts.

15. In June, 2017, at Faison's insistence, plaintiff began reporting directly to Faison. Consequently, the hostility displayed by Faison towards plaintiff escalated. For example, despite

her continued excellent performance, plaintiff's work and role were routinely minimized and any achievements were belittled.

16.     Additionally, Faison began targeting plaintiff by setting meetings during times she knew plaintiff would be unable to attend, and assigning additional responsibilities for plaintiff that directly conflicted with her responsibilities as HEAL coordinator.

17.     On June 2, 2017, Faison set a meeting for June 6, and informed plaintiff that she would not like the changes that were forthcoming. On June 6, 2017, at the subsequent meeting, plaintiff, in an attempt to improve communication and explain her role, provided Faison with details about the position, and presented some of the commendations and recognition she had received over the years. Additionally, plaintiff informed Faison and defendant Armstrong, from human resources, that she believed she was pregnant.

18.     After plaintiff shared the information regarding her pregnancy, both Faison and Armstrong, also African-American, implicitly and explicitly attempted to push plaintiff to resign, even stating that she would be "ostracized" if she did not. When plaintiff responded with her desire to remain in her position and continue to work hard, the two women laughed, and Faison turned to Armstrong and asked if they could fire her on the spot.

19.     Following the meeting on June 6, 2017, plaintiff emailed Armstrong, documenting her concerns of discrimination and harassment. Specifically, plaintiff requested assistance regarding the "discrimination/harassment" she was being subjected to, and requested relief from the "working environment and conditions" that Faison had forced upon her. Upon information and belief, Armstrong did nothing to assist plaintiff as a result of the email.

20.     On June 19, 2017, Faison met with plaintiff and presented a "corrective action plan." There was no legitimate justification for the action. Upon being presented with the plan, plaintiff

cited her excellent performance, despite the bullying and intimidation to which she was being subjected. Plaintiff also confirmed her pregnancy.

21. Following the meeting on June 19, Faison's targeting of plaintiff escalated. Plaintiff was pulled from her office that she had occupied for several years, and initially was directed to work from a copy room that was inadequate to house an employee. After notifying Faison of the state of the room, Faison directed plaintiff to report to a work room with two desks, already housing two other employees.

22. When plaintiff reported the lack of space, Faison responded by stating there was nowhere else and "if you don't like it I suggest you find somewhere else to work." Plaintiff ultimately found an empty conference room in which to work.

23. The hostility and disparate treatment manifested itself in other ways. Despite plaintiff being a designated salaried employee, Faison changed plaintiff's schedule, required her to clock in and out, and assigned secretarial duties. Additionally, Faison began harassing plaintiff with regards to documented doctor's appointments.

24. Plaintiff began experiencing severe stress and anxiety as a result of Faison's targeting and discrimination, and Armstrong's refusal to intervene, yet she continued to perform her job at a high level.

25. On June 22, 2017, plaintiff began feeling nauseated and noted blood when she used the restroom. Plaintiff called her mother and her doctor, both of whom instructed her to go home and elevate her feet, in light of the risk to the pregnancy.

26. Because of the repeated and unfounded scrutiny she endured daily, plaintiff initially looked for approval to leave from Faison, who was out, so she communicated her circumstance to Armstrong. Armstrong appeared unconcerned with plaintiff's medical emergency, and indicated

to plaintiff that if she left without approval, her job would be in jeopardy. Plaintiff begged Armstrong to give approval for her to leave, but Armstrong refused. In fact, in plaintiff's presence, Armstrong called Faison's office and mocked plaintiff's predicament to Faison's secretary.

27.     Eventually, despite Armstrong's steadfast refusal to acknowledge the seriousness of the situation and give approval for plaintiff to seek medical assistance, plaintiff left the office and called Emergency Medical Services ("EMS"). When EMS arrived, they noted that plaintiff's blood pressure and stress level were so severe that they determined potential pre-stroke symptoms. Additionally, EMS communicated their concern that plaintiff was in danger of miscarrying the pregnancy.

28.     Several hours later, plaintiff miscarried the pregnancy, at approximately 7:00pm on June 22, 2017.

29.     As a direct result of the continued harassment by Faison, the acquiescence of Armstrong, and the actions of Armstrong by denying permission to seek medical attention, plaintiff suffered severe emotional distress.  Specifically, plaintiff experienced disabling depression, withdrew from all family and friends, and experienced the loss of the relationship with the father of the child.  She sought treatment for her condition during her leave, and that treatment has continued to the present.  Additionally, she has experienced numerous panic attacks and overwhelming anxiety throughout the grieving process, and those symptoms have continued to the present.

30.     Plaintiff took approved medical leave through July 13, 2017. The day she returned, plaintiff was immediately presented with both a written reprimand, for what should have been an approved absence according to policy, on June 21, 2017, and a termination letter, dated July 17, 2017. Both the reprimand and the termination were baseless.

31.     Following the termination, plaintiff was replaced by an African-American female that was not pregnant.

### Administrative Remedies

32.     On or about December 18, 2017, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in Greensboro, North Carolina. Plaintiff's charge alleged discrimination due to gender, race, and retaliation against her in violation of Title VII. As alleged in the charge, this discrimination culminated in the termination of her employment by defendant. Plaintiff was issued a right to sue by the EEOC on June 20, 2018. Plaintiff has complied with all procedural prerequisites to filing this action.

### FIRST CLAIM FOR RELIEF
### Gender Discrimination in Violation of Title VII of the
### Civil Rights Act of 1964, *as amended*

33.     Plaintiff hereby incorporates the foregoing paragraphs, as if fully set out herein.

34.     At all times pertinent to this action, plaintiff, as a woman, was protected by Title VII, and in June, 2017, she notified defendants of her pregnancy. Additionally, her performance was superior to that of employees who were retained, and her performance exceeded any reasonable expectations of defendants; and subsequent to her discharge, an employee that was not pregnant, that was less experienced and less qualified for the job, replaced her. Defendants' reasons for its termination of plaintiff were pretextual, and unworthy of belief.

35.     Defendants wrongfully and intentionally discriminated against plaintiff because of her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, as follows:

a.     By criticizing plaintiff's performance without justification;

b.     By harassing plaintiff concerning visits to the doctor, and questioning her about those visits without justification;

c.     In terminating plaintiff's employment; and

d.     In replacing plaintiff with a female who was not pregnant, and who was less qualified and less experienced.

36.     As a proximate result of defendants' acts of discrimination against plaintiff, plaintiff has suffered substantial damages, including loss of income and benefits and other economic losses, mental anguish and emotional distress; loss of reputation and quality of life, and other damages to be proven at trial.

37.     Plaintiff is entitled to appropriate relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, including compensatory damages and reasonable attorneys' fees and costs for her representation pursuant to 42 U.S.C. § 2000e-5(k).

## SECOND CLAIM FOR RELIEF
### Race Discrimination in Violation of Title VII of the
### Civil Rights Act of 1964, *as amended*

38.     Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

39.     At all times pertinent to this action, plaintiff was within a protected class as a Caucasian individual, and subsequent to her discharge, plaintiff was replaced by an African-American female with  less experience and fewer qualifications.  By any standard, plaintiff's performance exceeded the reasonable expectations of her employer.

40.     Defendants' reasons for the termination of plaintiff were pretextual, and unworthy of belief.

41.     Defendants wrongfully and intentionally discriminated against plaintiff because of her race, Caucasian, in violation Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, as follows:

    a.   In criticizing plaintiff's performance without legitimate justification, in the time period leading up to plaintiff's termination;

    b.   In making false statements about plaintiff's performance in comparison to her non-Caucasian colleagues;

    c.   By making mocking comments to plaintiff about the fact that she is Caucasian;

    d.   In terminating plaintiff's employment without a legitimate, non-discriminatory basis; and

    e.   In replacing plaintiff with an African-American female who was less qualified and experienced than plaintiff.

42.     As a proximate result of defendants' illegal acts of race discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

43.     Plaintiff is entitled to appropriate relief pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, including compensatory damages and reasonable attorney's fees and costs for her representation herein pursuant to 42 U.S.C. § 2000e-5.

**THIRD CLAIM FOR RELIEF**
**Retaliation in Violation of Title VII**

44.     Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

45.     As alleged above, plaintiff notified human resources of her concerns regarding defendant's unlawful and discriminatory practices within the workplace. Specifically, plaintiff requested assistance regarding the "discrimination/harassment" she was being subjected to, and requested relief from the "working environment and conditions" that Faison had forced upon her.

46.     Following plaintiff's notification concerning the discriminatory practices, the discrimination and harassment escalated.

47.     Defendant retaliated against plaintiff for the above protected activity in violation of Title VII, 42 U.S.C. § 2000e-3. Specifically, defendant continued to discriminate against plaintiff, and ultimately terminated her employment.

48.     As a proximate result of plaintiff's opposition to gender and race discrimination, and defendant's subsequent retaliatory acts against plaintiff, plaintiff has suffered substantial damages, including loss of income and benefits and other economic losses, mental anguish and emotional distress, and other damages to be proven at trial.

49.     Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorney's fees and costs for her representation herein, as set forth above.

## FOURTH CLAIM FOR RELIEF
### Wrongful Discharge in Violation of the Public Policy of North Carolina

50.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

51.     The public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.2, mandates that employers of fifteen or more employees shall not discriminate on the basis of race. At all times pertinent to this claim, TCS employed in excess of fifteen employees.

52.     As stated above, plaintiff was a Caucasian protected by the public policy of North Carolina and, who was, at the time of her termination, consistently performing at a level higher

than other employees who were similarly situated; and, subsequent to her discharge, an African-American who was less experienced and qualified for the job replaced her.

53.    Defendants' reasons for its termination of plaintiff were pretextual, and unworthy of belief.

54.    Defendants wrongfully and intentionally discriminated against plaintiff because of her race in violation of the public policy of North Carolina, as follows:

      a.   In criticizing plaintiff's performance without legitimate justification, in the time period leading up to plaintiff's termination;

      b.   In making false statements about plaintiff's performance in comparison to her non-Caucasian colleagues;

      c.   By making mocking comments to plaintiff about the fact that she is Caucasian;

      d.   In terminating plaintiff's employment without a legitimate, non-discriminatory basis; and

      e.   In replacing plaintiff with an African-American female who was less qualified and experienced than plaintiff.

55.    Plaintiff will suffer irreparable harm in the absence of equitable relief from this Court, and there is no adequate remedy at law to prevent such harm. Accordingly, plaintiff is entitled to declaratory, injunctive and equitable relief including reinstatement of plaintiff to her position with defendants.

56.    As a proximate result of defendants' violations of the public policy of North Carolina, plaintiff has incurred and suffered substantial damages, including lost income and

benefits and other economic losses; mental anguish and emotional distress; loss of quality and enjoyment of life, and employment reputation; and other losses to be proven at trial.

57.     Defendants' acts, as described above, were deceptive, willful and wanton, and evinced an intentional or reckless indifference to and disregard for the civil rights of plaintiff. Aggravating circumstances concerning defendants' conduct are provided in ¶¶ 7-31 above. Accordingly, plaintiff is entitled to punitive damages in an amount to be determined by the jury.

**FIFTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress against Armstrong, Faison, and**
**TCS Board of Education**

58.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

59.     As described above, defendants engaged in conduct designed and calculated to abuse, harass, molest and intimidate plaintiff, including the following:

    a.  Faison harassed and abused plaintiff through her treatment of plaintiff throughout the period of April - June, 2017, including, but not limited to: the deliberate and explicit ostracism, changing her work hours, depriving her of any appropriate place to work, discriminating against her due to her race and pregnancy, harassing her concerning doctor's visits, by repeatedly telling plaintiff to quit and find alternative work or the ostracism would continue, and by reprimanding and terminating her without justification;

    b.  Armstrong harassed and abused plaintiff by refusing to assist her following plaintiff's request, through deliberate and explicit ostracism, through acquiescence in discrimination due to plaintiff's race and pregnancy, and by participating in Faison's demeaning insistence that

plaintiff quit and find alternative work. Additionally, Armstrong, on June
22, 2017, harassed and abused plaintiff by refusing to approve plaintiff
leave to seek medical attention, by indicating that if she left to seek
medical attention her job would be in jeopardy, and by mocking plaintiff's
serious medical condition in a phone call to Faison's office.

60.     The actions of defendants, as described above, were extreme and outrageous, and
exceeded the bounds tolerated by civilized society.

61.     In their above actions, defendants intended to inflict and did, in fact, inflict severe
emotional distress upon plaintiff.

62.     As alleged above, defendant TCS Board is liable for Faison and Armstrong's acts
against plaintiff in that they committed such conduct in the course of their employment; and TCS
Board acquiesced in, condoned, and ratified said conduct, and failed to take reasonable action to
protect plaintiff.

63.     As a proximate result of the unlawful actions of defendants, plaintiff suffered lost
income and benefits, severe emotional distress and other losses, for which she is entitled to
compensatory damages.

64.     The actions of defendants were willful, wanton, and malicious, and entitle
plaintiff to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.
Aggravating circumstances are alleged above in paragraphs 7-31.

### SIXTH CLAIM FOR RELIEF
#### 42 U.S.C. §1983 Violation – Equal Protection – against all defendants

65.     Plaintiff hereby incorporates by reference the above paragraphs as if fully set forth
herein.

66. In the discriminatory treatment of plaintiff, culminating in her termination, defendants, acting under color of state and local law, denied to plaintiff her Constitutional right to equal protection of the law, to be free from race and sex discrimination, as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

67. Specifically, defendants discriminated against plaintiff as follows:

       a. In criticizing plaintiff's performance without legitimate justification, in the time period leading up to plaintiff's termination;

       b. In making false statements about plaintiff's performance in comparison to her non-Caucasian colleagues;

       c. By harassing plaintiff concerning visits to the doctor, and questioning her surrounding those visits without justification;

       d. By making mocking comments to plaintiff about the fact that she is Caucasian;

       e. In terminating plaintiff's employment without a legitimate, non-discriminatory basis; and

       f. In replacing plaintiff with an African-American female who was less qualified and experienced than plaintiff.

68. Defendants are liable for the violation of plaintiff's Constitutional rights on the grounds that the violations arose from the defendant TCS Board's official action, policy or custom in condoning and failing to address race and sex discrimination within TCS; from the actions and omissions of Faison and TCS Board, the final decisionmaking authorities concerning policies and practices of TCS; from the defendant TCS Board's failure to train and supervise Faison with respect

to race and sex discrimination; and from TCS Board's deliberate indifference to race and sex discrimination occurring within TCS.

69.    As a proximate result of said violations, plaintiff has suffered damages, including loss of income and benefits; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial. Plaintiff is entitled to recover her compensatory damages pursuant to 42 U.S.C. §§ 1981a.

## SEVENTH CLAIM FOR RELIEF
### Race Discrimination- Violations of 42 U.S.C. § 1981

70.    Plaintiff hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

71.    At all times pertinent to this action, plaintiff was a protected member of a class as an individual of Caucasian race, ancestry, and descent.

72.    Defendants intentionally discriminated against plaintiff as a result of her race, Caucasian, during the course of her employment, and her unlawful termination is in violation of the Civil Rights Act of 1866, 42 U.S.C § 1981, as amended by the Civil Rights Act of 1991.

73.    As set forth herein, defendants intentionally discriminated against plaintiff and deprived plaintiff of the same rights as non-Caucasians in the performance, enjoyment, benefits, and privileges of her employment relationship with defendant, in violation of 42 U.S.C. § 1981.

74.    As a proximate result of defendants' illegal acts of intentional discrimination including plaintiff's unlawful termination based on her Caucasian race, ancestry, and descent, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

75.   Plaintiff is entitled to appropriate relief pursuant to 42 U.S.C. § 1981, as amended, including compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

The plaintiff requests the following relief:

(1)   That plaintiff be reinstated to her position with defendant, with back pay and all benefits and seniority rights;

(2)   That plaintiff recover of the defendant compensatory damages in an amount in excess of $100,000;

(3)   That plaintiff recover punitive damages in an amount to be determined by the jury;

(4)   That plaintiff recover the costs of this action, including reasonable attorneys' fees for her representation herein as required in 42 U.S.C. § 2000e, 42 U.S.C. § 1988;

(5)   That plaintiff recover pre-judgment and post-judgment interest on all damages awarded herein; and

(6)   That this Court grant such other relief as it deems just and appropriate.

Pursuant to Rule 38(b) of the North Carolina Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues presented herein.

This the 8ᵗʰ day of October, 2018.

R. Michael Elliot (42806)
Attorney for Plaintiff
Elliot Morgan Parsonage, PLLC
300 E. Kingston Ave, Suite 200
Charlotte, NC 28203
Telephone:  704-707-3705
Facsimile:   336-724-3335
E-Mail:      michaelelliot@emplawfirm.com